Filed 3/20/23 (unmodified opinion attached)

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>DWAYNE LAMONT BURGESS,<br><br>        Defendant and Appellant. | C094813<br><br>(Super. Ct. No. CR115729)<br><br>ORDER MODIFYING OPINION<br><br>[NO CHANGE IN JUDGMENT] |

        APPEAL from a judgment of the Superior Court of Sacramento County, Laurie M. Earl, Judge.  Reversed.

        Scott Concklin, under appointment by the Court of Appeal, for Defendant and Appellant.

        Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Christopher J. Rench and Kathryn L. Althizer, Deputy Attorneys General, for Plaintiff and Respondent.

1

THE COURT:

It is ordered that the opinion filed in this case on February 23, 2023, be modified as follows:

1.     On page 11, in the second to last sentence of the first paragraph, the word "injury" is changed to "inquiry" so the sentence reads:

> Subdivision (d)(3) of section 1172.6 does not limit the court's inquiry to major participant and reckless indifference; it encompasses a broader murder inquiry.

There is no change in the judgment.

BY THE COURT:

/s/_____
ROBIE, Acting P. J.

/s/_____
DUARTE, J.

/s/_____
BOULWARE EURIE, J.

2

Filed 2/23/23 (unmodified opinion)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C094813 |
| Plaintiff and Respondent, | (Super. Ct. No. CR115729) |
| v. | |
| DWAYNE LAMONT BURGESS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Laurie M. Earl, Judge. Reversed.

Scott Concklin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Christopher J. Rench and Kathryn L. Althizer, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant Dwayne Lamont Burgess appeals the trial court's order denying his petition for resentencing after an evidentiary hearing pursuant to Penal Code[1] section 1172.6.[2] At such a hearing, the prosecution is tasked with proving "beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).) There is no dispute defendant was eligible for such a hearing, the question is what independent findings the trial court was required to make when determining defendant's guilt and whether those findings were sufficient.

As we will describe, although defendant claims the trial court erroneously considered itself to be bound by the jury's verdict at trial, the trial court did indeed conduct an independent analysis of the record and evidence before finding defendant guilty of murder under current law. We agree with defendant that this independent analysis was required and that the principles of collateral estoppel are inapplicable to this analysis. We also agree with defendant that the trial court's factual findings reveal the crime of attempted theft by false pretenses and not attempted robbery—the precise issue clarified by our Supreme Court after his conviction. Although the People argue the trial court was bound by the jury's finding that defendant committed attempted robbery under principles of collateral estoppel, and even if not, the trial court's ultimate finding that defendant is guilty of murder under current law is supported by substantial evidence, we disagree with the People on both points.

---

[1] Undesignated section references are to the Penal Code.

[2] Effective June 30, 2022, the Legislature renumbered former section 1170.95 as section 1172.6. (Stats. 2022, ch. 58, § 10.) There were no substantive changes to the statute. Although defendant filed his petition under former section 1170.95, we cite the current section 1172.6 throughout this opinion.

Because theft by false pretenses is not a predicate felony to felony murder (§§ 188, subd. (a), 189, subds. (a), (e)), the prosecution did not prove beyond a reasonable doubt that defendant is guilty of murder under current law.  Accordingly, we reverse.

FACTUAL AND PROCEDURAL BACKGROUND

As previously summarized in our unpublished opinion on defendant's direct appeal, "[d]efendant and his friends planned to 'rip-off' a drug dealer with whom defendant had done business before.  Events did not proceed as planned and in the sudden and violent denouement, defendant's accomplice shot and killed the dealer." (*People v. Burgess* (Mar. 31, 1995, C017967) [nonpub. opn] (*Burgess*).)

A bystander saw two cars flee the scene of the shooting and followed one while calling police. (*Burgess*, *supra*, C017967.)  A police officer soon caught up to the fleeing car and saw a passenger throw something from the car.  "Eventually, the car pulled over and its occupants were detained.  Defendant was in the front passenger seat," his brother was driving, and his cousin was alone in the backseat. (*Ibid*.)  At the scene of the shooting, emergency personnel found money, fake money, a .38-caliber handgun, and a .25-caliber expended shell casing. (*Ibid*.)

"Sacramento Sheriff's Detective Robert Bell interviewed defendant at approximately 11:30 p.m. on the night of the shooting. . . .  After waiving his *Miranda*[3] rights, defendant initially denied any knowledge of the shooting and claimed that he, his brother, and his cousin were at a friend's house that evening." (*Burgess*, *supra*, C017967.)

"[Subsequently, d]efendant gave Bell a statement which was recorded and later played for the jury.  During the interview, defendant explained that he and his companions had arranged to buy marijuana from the victim but planned to 'rip him off'

_____

[3]     *Miranda v. Arizona* (1966) 384 U.S. 436.

3

by giving him some real money wrapped around a wad of fake bills. The idea was to 'rip off' the victim and get the drugs. Defendant was armed with a .357 [handgun]; [defendant's cousin] had a .25-caliber handgun. Defendant handed the victim the fake money roll. The victim reacted angrily and called the deal off. [Defendant] pulled his gun out and 'shot in the air . . . boom' to scare the victim and show he was serious. The 'dude tripped,' tried to grab [defendant's] gun, and there was a struggle. Defendant heard a second gunshot and thought [his cousin] had shot [the victim]. They fled without obtaining the marijuana." (*Burgess*, *supra*, C017967.) A .25-caliber handgun was later recovered from the location where Detective Bell saw a passenger of the fleeing car throw something before being pulled over. Experts testified at trial that the bullet recovered from the victim and the shell casing at the scene matched the .25-caliber handgun. (*Ibid*.)

"Defendant testified on his own behalf that on the afternoon of December 29, 1990, [his cousin] told him he wanted to get some marijuana. Defendant arranged to buy with [the victim] who had sold him marijuana a few times in the past. Because [the victim] had 'shorted' him on a previous buy, defendant wanted to use fake money to shortchange [the victim] this time. . . . [Defendant] planned to hand [the victim] the wad of fake and real bills, and to take the marijuana from [the victim]. He did not intend to draw a gun during the transaction, and did not plan to take [the victim]'s marijuana or money at gunpoint. [Defendant's cousin] was not aware of defendant's plan.

"[Defendant's brother] drove the trio to the prearranged location. [The victim] and a woman were waiting in a white car. Defendant was armed with a loaded gun and was prepared to use it. He did not know that [his cousin] was armed.

"Defendant walked 30 to 50 feet toward [the victim] who was 10 to 15 feet away from the white car. [The victim] asked for the money, and defendant handed it to him. Defendant asked, 'Where is the weed?,' and [the victim] answered, 'One moment and I'll bring it back.' Defendant said he was 'not going to wait a minute,' and ordered [the

4

victim] to 'give [him] back [his] money.' As defendant reached for the money, [the victim] reached behind his back in a manner which suggested to defendant that [the victim] was armed. At that point, defendant drew his revolver and fired a shot into the air to scare [the victim]. As he turned and ran toward his car, defendant heard another shot. Defendant and [his cousin] got into the car and [his brother] drove them toward the freeway. Defendant threw his gun out the car window because '[t]he police were behind [them].'

"Defendant testified he did not try to take [the victim's] marijuana or money at gunpoint because '[t]hat wasn't why [he] was there.' He claimed he was there 'to shortchange' [the victim], not 'to take nothing from him.' The reason he fired a shot in the air was so [the victim] would 'hand [him his] money back.' " (*Burgess*, *supra*, C017967.)

"A jury convicted defendant . . . of attempted robbery and first degree felony murder and found he personally used a firearm in the commission of each offense. [Citations.] Defendant was sentenced to a state prison term of 29 years to life for the murder and its enhancement; [the] sentence for the attempted robbery and its enhancement was stayed pursuant to section 654." (*Burgess*, *supra*, C017967.)

Defendant filed a petition under section 1172.6 and was granted a hearing under subdivision (d)(3). The prosecution introduced the clerk's and reporter's transcripts from defendant's trial, the appellate opinion, and defendant's probation report. Defendant presented the testimony and declaration of his brother.

Defendant's brother testified he drove defendant and defendant's cousin to a marijuana purchase. While defendant's brother stayed in the car, defendant and defendant's cousin met with the drug dealer. Defendant's brother heard between one and two gunshots and then defendant ran to the car. Defendant's brother then heard another gunshot before defendant's cousin ran to the car. Once in the car, defendant's cousin

5

admitted to shooting the victim. Defendant's brother did not know who threw the gun from the car.

As relevant here, the trial court found defendant was ineligible for resentencing because he was a major participant in an attempted robbery who acted with reckless indifference to human life. The trial court detailed its factual findings as follows: "[D]efendant's involvement in the planning of the attempted robbery was significant. The defendant devised the plan to meet the victim in order to purchase marijuana. It was the defendant who called the victim and set up the meeting. All the while, the defendant had different intentions. Having been shortchanged in a marijuana deal with the victim in the past, the defendant intended to extract revenge by shortchanging the victim on this deal. To further that revenge, . . . the defendant . . . would use fake money wrapped in real money as his payment."

"[D]efendant was armed with and used a firearm during the confrontation with the victim." "The evidence reveals that the defendant was aware of the particular dangers posed by the nature of the crime. He had previous dealings with the victim where the victim shorted him in a marijuana deal. Additionally, the defendant anticipated that the victim could be armed as he told [a detective] that 'Drug dealers usually carry guns.' [Citation.] Recognizing this risk, the defendant prepared himself for the potential for danger by arming himself with a loaded firearm. Lastly, although defendant professed that he was unaware that his [cousin] brought a firearm with him, the evidence demonstrates that the defendant knew [his cousin] to carry a gun in the past. It is difficult for the Court to accept that the defendant did not know his accomplice was armed during this event."

"[D]efendant was present at the scene of the killing. It was the defendant who was first to fire a gun which . . . significantly increased the dangerousness of the confrontation. By virtue of this[,] it can be argued that the defendant himself controlled the outcome of this event. The fact that the defendant chose to bring a gun to his meeting

6

with the victim, [and] that he was the first to produce and fire the gun during their confrontation indicates that the defendant failed to take reasonable steps to minimize the inherent risks of 'ripping off' a known drug dealer who had shorted him in the past and demonstrates that the defendant [was a major participant]."

"[A]fter firing his gun, the defendant began running back to the car he had come in. Approximately 30[ to ]45 seconds later, he heard at least one additional gun shot. The defendant then fled the scene, and upon realizing that they were being followed by law enforcement, tossed his gun out of the car window. Additionally, in the defendant's interview with Detective Bell, he told the [d]etective that he knew [his cousin] had shot the victim and was present when that occurred. Through the testimony of [defendant's brother], it is clear that the defendant was at the very least, immediately aware that [his cousin] had shot the victim once he and [his cousin] got into the car after the shooting. The defendant did nothing to check on the condition of the victim after he learned that the victim had been shot."

The trial court further found that defendant's behavior was "particularly risky given that the victim was a known drug dealer, [defendant] expected drug dealers to be armed, [defendant] brought a loaded firearm which he was obviously prepared to use[,] and [defendant] intended to 'rip off' a known drug dealer who had shorted him in the past. The potential for it to turn violent was obvious." Indeed, "defendant's plan for the robbery posed obvious risks [o]f lethal violence and he made no attempt to lessen the risks."

"It bears repeating that [defendant] planned[,] and chose to lead, a crime that involved a particularly high risk of violence. A robbery of a drug dealer who had short changed [defendant] in the past. Not only was [defendant] armed with a firearm, he fired that weapon and was the first to do so during the confrontation. It is the Court's opinion based on the facts presented, this conduct by the defendant created the circumstances that led to the victim's death. Additionally, at some point the defendant knew [his cousin]

7

was armed, had also fired his weapon[,] and [had] in fact shot the victim and yet the defendant failed to inquire on the welfare of the victim or offer any aid. All of this convinces the Court that the defendant acted [with] reckless indifference to human life."

Accordingly, the trial court found the prosecution met its burden of proving beyond a reasonable doubt that defendant was guilty of murder under current law.

Defendant appeals.

## DISCUSSION

### I

*Collateral Estoppel Does Not Apply To The Jury's Attempted Robbery Finding*

Defendant contends he was entitled to a new beyond a reasonable doubt finding by the trial court that he committed attempted robbery as the predicate felony to felony murder. We agree, but conclude that the trial court provided the required independent finding.

Section 1172.6, subdivision (d)(3) provides in pertinent part: "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019. The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. . . . The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens. A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements

8

attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges."

A plain reading of this subdivision requires the prosecution to prove beyond a reasonable doubt that defendant is guilty of murder under current law. The People do not argue that the language of section 1172.6, subdivision (d)(3) precludes the trial court from revisiting the jury's predicate felony finding when reviewing the evidence admitted at the evidentiary hearing to determine whether the prosecution has made a reasonable doubt showing of guilt. Instead, the People contend principles of collateral estoppel preclude the trial court from departing from a jury's predicate felony finding. Not so.

"As traditionally understood and applied, issue preclusion bars relitigation of issues earlier decided 'only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.' " (*People v. Strong* (2022) 13 Cal.5th 698, 716 (*Strong*).)

"Even when the threshold requirements for issue preclusion are met, one well-settled equitable exception to the general rule holds that preclusion does not apply when there has been a significant change in the law since the factual findings were rendered that warrants reexamination of the issue. [Citation.] As the high court explained more than a half century ago: '[A] judicial declaration intervening between the two proceedings may so change the legal atmosphere as to render the rule of collateral estoppel inapplicable.' [Citations.] The Courts of Appeal in this state have likewise long recognized that changes in the law may supply a basis for denying a prior determination preclusive effect." (*Strong*, *supra*, 13 Cal.5th at pp. 716-717.)

9

The limits of collateral estoppel in the section 1172.6 context were explored by our Supreme Court in *Strong*. (*Strong*, *supra*, 13 Cal.5th at pp. 715-721.) There, our Supreme Court held that collateral estoppel did not preclude petitioners with major participant and reckless indifference findings from demonstrating entitlement to resentencing if those findings had been found before clarification of the applicable standards in *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522. (*Strong*, at pp. 715-721; *id.* at p. 717 [clarification of the standards for major participant and reckless indifference articulated in *Banks* and *Clark* "represent the sort of significant change that has traditionally been thought to warrant reexamination of an earlier-litigated issue"].)

Our Supreme Court's clarification of the law in *Banks* and *Clark* is analogous to the clarification at issue here. Citing *People v. Williams* (2013) 57 Cal.4th 776 (*Williams*), defendant argues the law governing the felonious taking element of robbery has been clarified since defendant's conviction. The People appear to agree. In *Williams*, the defendant contended his robbery conviction should be reversed because robbery requires theft by larceny, not by false pretenses. (*Id.* at p. 781.) Our Supreme Court agreed. In explaining its acceptance of the defendant's position, our Supreme Court relied in part on robbery's requirement of a trespassory taking, which is absent in a theft by false pretenses. "[T]heft by false pretenses involves the consensual transfer of possession as well as title of property; therefore, it cannot be committed by trespass . . . ." (*Id.* at p. 788.) *Williams* changed the legal landscape of the taking required for a robbery or an attempted robbery conviction. Now, no matter the force or fear involved in a taking, the taking must be without consent to support a felonious taking finding, and, as a result, a conviction for robbery or attempted robbery.

While *Strong* pertained to the showing a defendant is required to make at the prima facie stage of the section 1172.6 resentencing process, its reasoning is even more applicable to the prosecution's showing after an evidentiary hearing, at which defendant's

10

culpability is relitigated to a beyond a reasonable doubt certainty. At this point, judicial efficiency is furthered by the consideration of issues interrelated to a defendant's murder conviction. (See *Strong, supra,* 13 Cal.5th at p. 716 [" 'Even if the[] threshold requirements [of collateral estoppel] are satisfied, the doctrine will not be applied if such application would not serve its underlying fundamental principles' of promoting efficiency while ensuring fairness to the parties"].) Also, as discussed, defendant is entitled to an evidentiary hearing under section 1172.6, subdivision (d)(3)—that subdivision mandates a reasonable doubt standard of proof to find a petitioner guilty of murder under current law. Subdivision (d)(3) of section 1172.6 does not limit the court's inquiry to major participant and reckless indifference; it encompasses a broader murder injury. We see no reason to depart from that mandate here when there has been a postconviction clarification to the law relevant to that broad inquiry.

Most importantly, in defendant's particular case, the clarification of the law is highly relevant to a fact finder's determination of his guilt for murder. This is not a case where defendant and an accomplice ambushed a drug dealer and stole money and drugs at gunpoint. This is a case firmly straddling the line between a felonious and nonfelonious taking that requires credibility determinations and inferences properly left to a fact finder. Facts were found following defendant's initial hearing, but under the wrong standard. Defendant's jury could have determined he and his cousin intended to take marijuana from the victim by any means necessary, including without consent and by force or fear. The jury could have also determined defendant and his cousin intended to trick the victim into giving them marijuana and prepared themselves to use force against the victim if the situation escalated, which it did. Only one of these determinations is a viable theory for an attempted robbery finding as a predicate for felony murder, and it is unclear which finding defendant's jury relied on when convicting him of felony murder.

Given our Supreme Court's clarification of the taking requirement applicable to robbery that occurred after defendant's conviction, collateral estoppel does not preclude the trial court from independently determining whether defendant committed attempted robbery as the predicate felony to felony murder following his section 1172.6, subdivision (d)(3) evidentiary hearing.

Although defendant argues to the contrary, we agree with the People that the trial court properly acted as an independent fact finder when it found that defendant committed the underlying felony. As is clear from the trial court's findings that we have set forth at length *ante*, the trial court applied the correct standard of proof, made extensive factual findings relevant to whether defendant committed murder under current law, and made a legal conclusion defendant did commit murder under current law. As defendant points out, the issues of his participation in the predicate felony and the predicate felony itself are interrelated and cannot be divorced from one another. Given the lengthy and detailed order denying defendant's petition for resentencing, we conclude it is adequate for our review. However, as we next address, those independent findings require reversal, as they do not describe a predicate felony.

II

*Insufficient Evidence Supports The Trial Court's Attempted Robbery Finding*

Defendant contends insufficient evidence supports the trial court's finding that he is guilty of murder under current law. This argument includes challenges to the trial court's findings that defendant committed an attempted robbery and was a major participant who acted reckless to human life. We agree insufficient evidence supports the trial court's finding defendant committed attempted robbery. Because the predicate felony necessary for a felony murder finding is absent, we do not need to address defendant's contentions that insufficient evidence also supports the trial court's major participant and reckless indifference findings.

12

On our substantial evidence review, " 'we review the evidence in the light most favorable to the prosecution and presume in support of the [order] the existence of every fact the [trial judge] could reasonably have deduced from the evidence. [Citation.] "Conflicts [in the evidence] . . . subject to justifiable suspicion do not justify the reversal of a judgment [or order], for it is the exclusive province of the trial judge . . . to determine the . . . truth or falsity of the facts upon which a determination depends." ' " (*People v. Williams* (2020) 57 Cal.App.5th 652, 663.) "Although we must ensure the evidence is reasonable, credible, and of solid value" (*People v. Jones* (1990) 51 Cal.3d 294, 314), reversal is not warranted unless " ' "upon no hypothesis whatever is there sufficient substantial evidence to support the [trial court's ruling]." ' " (*People v. Cravens* (2012) 53 Cal.4th 500, 508.)

As relevant here, section 188, subdivision (a)(3) reads: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." Section 189, subdivision (e) allows for a murder conviction only when "[a] participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs" was the actual killer, aided and abetted with the intent to kill, or acted as a major participant with reckless indifference to human life when committing the underlying felony enumerated in subdivision (a). The parties agree the felony listed in section 189, subdivision (a) at issue here is the felony of attempted robbery.

Robbery is defined as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) An attempted robbery consists of two elements: (1) the specific intent to rob; and (2) a direct, unequivocal, but ineffectual, overt act towards the commission of the intended robbery. (*People v. Vizcarra* (1980) 110 Cal.App.3d 858, 861.)

13

In *Williams*, the defendant used a credit card that had been "re-encoded with a third party's credit card information" to purchase a gift card from a store cashier, who did not know that such purchases were against company policy. (*Williams*, *supra*, 57 Cal.4th at p. 780; *id*. at pp. 791-792.) After being "permitted" to keep the first gift card, defendant tried to purchase more gift cards at a different register; as a result, he came under the scrutiny of the store's loss prevention personnel. (*Id*. at p. 780.) Security guards eventually confronted the defendant; they pointed out to him that the number on his credit card did not match the credit card number on the sales receipt. When the guards attempted to detain the defendant, he pushed past them and ran. He was ultimately apprehended and convicted of robbery, burglary, theft by false pretenses, and other crimes. (*Ibid*.)

On appeal, the defendant contended "his robbery conviction[] should be reversed because robbery requires theft by larceny," not false pretenses. (*Williams*, *supra*, 57 Cal.4th at p. 781.) Our Supreme Court agreed. In explaining its acceptance of the defendant's position, our Supreme Court relied in part on robbery's requirement of a trespassory taking, which is absent in a theft by false pretenses. "[T]heft by false pretenses involves the consensual transfer of possession as well as title of property; therefore, it cannot be committed by trespass." (*Id*. at p. 788.) "[The] defendant did not commit larceny. [The store], through its store employees, consented to transferring title to the gift cards to [the] defendant. [The d]efendant acquired ownership of the gift cards through his false representation, on which [the store] relied, that he was using valid payment cards to purchase the gift cards. . . . Because a 'felonious taking,' as required in California's robbery statute [citation], must be without the consent of the property owner, . . . [citation], and [the store] consented to the sale of the gift cards, [the] defendant did not commit a trespassory (nonconsensual) taking, and hence did not commit robbery." (*Ibid*., italics omitted.)

14

Distinguishing *Williams*, the appellate court in *Mireles* concluded a robbery occurred after a defendant took a bottle of weed killer and placed a different universal product code sticker on it, which had the effect of reducing the product's value from $39.98 to $4.47 at checkout. (*People v. Mireles* (2018) 21 Cal.App.5th 237, 240.) Defendant paid the $4.47 and left the store. The defendant was stopped by a loss prevention officer and swung his closed fist at the officer. (*Id.* at pp. 240-241.) The appellate court reasoned that, because the store did not consent to the defendant taking the weed killer at a reduced price, the taking was nonconsensual and represented a felonious taking for the purposes of robbery. (*Id.* at p. 244 ["a retail store . . . is ordinarily deemed to consent to its customers' handling of the goods for sale, such consent does not extend to handling them with the intent of stealing"].)

Defendant's case is more like the case in *Williams*. The trial court's factual findings were that defendant was an accomplice with his cousin to a "plan to meet the victim in order to purchase marijuana," but with different intentions "to extract revenge by shortchanging the victim on this deal. To further that revenge, it was the defendant who would use fake money wrapped in real money as his payment." Further, while defendant was "prepared to use" a gun, defendant "intended to 'rip off' a known drug dealer who had shorted him in the past." As for the purpose of defendant's gun possession, the trial court found "defendant anticipated that the victim could be armed . . . [and r]ecognizing this risk, the defendant prepared himself for the potential for danger by arming himself with a loaded firearm." Additionally, the trial court found defendant's use of the gun only evidenced his "fail[ure] to take reasonable steps to minimize the inherent risks of 'ripping off' a known drug dealer . . . ." and that, after firing the gun, defendant ran away. Notably, the trial court did not find that defendant possessed a gun for the purpose of taking the marijuana from the victim or that defendant intended to take the marijuana by any means other than by ripping off the victim or tricking the victim into handing over the marijuana.

15

The People contend defendant's case is distinguishable from *Williams* because the defendant in *Williams* had already completed the theft by false pretenses when he applied force. In contrast, here, defendant applied force before taking the marijuana leading to the inference that he intended to take the marijuana by force. The problem with the People's argument is twofold. First, the trial court did not find that defendant used his gun for the purpose of taking property. While that arguably could be inferred from the evidence presented, nothing in the trial court's order indicates the trial court made that inference. And second, because defendant was not the actual killer nor did he have the intent to kill, the question is not what crime defendant committed when firing his gun. Even if defendant was attempting to rob the victim, the victim did not die during the commission of that robbery. The victim died during the felony perpetrated by defendant's cousin. Thus, the relevant question is what crime defendant and his cousin were committing as coparticipants when defendant's cousin killed the victim. (§ 189, subd. (e) ["A participant in the perpetration or attempted perpetration of a[n enumerated] felony . . . *in which* a death occurs is liable for murder only if" "[t]he person was a major participant in the underlying felony and acted with reckless indifference to human life" as defined], italics added.) From the trial court's order, it is clear it found defendant and his cousin shared an intent to shortchange or rip off the victim by exchanging fraudulent money for an unaltered product when the situation escalated, and defendant's cousin shot the victim. Such intent is insufficient to demonstrate defendant intended to take personal property of another without consent.

Accordingly, although the trial court properly conducted an independent review, insufficient evidence supports the trial court's finding that defendant committed attempted robbery as the predicate felony to felony murder. Because there is no felony to predicate defendant's felony murder conviction upon, insufficient evidence supports the trial court's finding that defendant is guilty of murder under current law.

16

# DISPOSITION

The trial court's order is reversed.

/s/
ROBIE, Acting P. J.

We concur:

/s/
DUARTE, J.

/s/
BOULWARE EURIE, J.

17